# C. H. DONALDSON v. MONA MOTOR OIL COMPANY.[1]

January 18, 1935.

No. 30,145.

See 190 Minn. 231, 251 N. W. 272.

*Wright & Baldwin, Addison G. Kistle,* and *Robert L. Palmer,* for appellant.

*Evans & Evans* and *George P. Gurley,* for respondent.

JULIUS J. OLSON, JUSTICE.

Defendant appeals from an order denying its blended motion for judgment notwithstanding or a new trial. The case was here before (Donaldson v. Mona Motor Oil Co. 190 Minn. 231, 251 N. W. 272) wherein the facts are fully stated, thus making it unnecessary for us now to repeat the same. Pursuant to the decision therein rendered, the case was sent back for [190 Minn. 236] "a

[1]Reported in 258 N. W. 504.

new trial on the single issue of whether plaintiff actually evicted defendant from the premises." Trial was had pursuant thereto, and plaintiff recovered a verdict. Defendant assigns a great many errors as reasons for reversal. But few require discussion 'here and will be disposed of thus:

■ Defendant requested an instruction to the effect that plaintiff had on August 26, 1932, commenced an action against defendant to collect rent and also $3,000 damages to the leased personal property; that as a matter of law plaintiff did not have a cause of action for such damages; that "you as jurors have the right to take into consideration now the bringing of such action and the assertion of such claim for damages * * * for the purpose of determining whether or not on the 26th day of August, 1932, the said C. H. Donaldson evicted Clarence Klinsing * * * from the garage building." Aside from the argumentative form of the requested instruction, we think the rejection thereof by the trial court was right because on the prior appeal it was definitely determined that plaintiff's first action (190 Minn. 231, 235, 251 N. W. 272, 273) "did not effect a termination of the lease * * * and, since it had not been terminated at the time of the first suit, plaintiff merely attempted to pursue a remedy not open to him and so is not prejudiced thereby." The sole purpose of the new trial, as determined in and by the former decision, was to permit the jury to pass upon and determine whether (*Id.* p. 235) "plaintiff himself took a part in the levy of the attachment and actually requested a tenant of defendant to vacate" the premises. To that particular issue only was the testimony properly admissible. Defendant attempted in various ways to bring into this case (on retrial) plaintiff's claim for damages in the former action. This is evidenced not only by the requested instruction but likewise by offers of proof. As we view the case, these matters were entirely foreign to the present issue and as such properly excluded. The decision in the former case became the law of the case. 1 Dunnell, Minn. Dig. (2 ed. & Supps. 1932, 1934) § 398.

■ The court instructed the jury amongst other things as follows:

"Now, it is the claim of the defendant that on said date of the attachment the plaintiff told Klinsing in substance to take his hat and coat and get out of the building, and that it would be locked up. That such statement was made in the presence of the deputy sheriff, and said Klinsing packed up his belongings because of such statement by the plaintiff, and that he would not have moved from the garage but for such orders from the plaintiff. That in substance is the claim of the defendant in this action.

"The plaintiff denies that he ever made such statement to Klinsing, and in fact denies he had any talk with Klinsing previous to the time Klinsing picked up preparatory to moving out. There is other testimony tending to corroborate the claims of each of the parties in reference to whether such conversation was had.

"This is the sole and only question for you to decide, and when you have agreed upon what really occurred in and about the garage building on the day in question you have decided the lawsuit."

And further:

"I instruct you, that every person is presumed to intend the results of their own deliberate words and deeds, and if you find that the plaintiff did use the words it is claimed he uttered and they were of such a nature that a reasonable person would understand he intended to order Klinsing out of the building, then you have a right to assume that the plaintiff intended to do exactly what he was ordered to do. Hence the one and only question for you to decide is whether the plaintiff used the words claimed by two witnesses and disputed by others to be actually spoken by him, and if he did so speak, was this the cause of Klinsing going out of the building? And next, did the plaintiff when and if he spoke these words, intend Klinsing should act upon them and get out of the building?"

Defendant's argument is directed against the last quoted portion. Plaintiff's testimony bearing upon this question is very short: Q. "—in the bringing of the suit that you brought to collect your rent, did you have any intention to dispossess any of the tenants of the building?" This was objected to as immaterial and as call-

ing for a conclusion of the witness. The objection was overruled, and the answer was, "No, sir." Then followed this question: "Did you have any intention to dispossess Mr. Klinsing?" Same objection and ruling. Answer was, "No, sir." The next question was: "Or the Mona Motor Oil Company?" Same objection and ruling. Answer was, "No, sir."

The acts of the landlord to effectuate eviction must be something more than a mere trespass. The rule is stated in 36 C. J. p. 255 [§ 979]F, thus:

"The term 'eviction' was formerly used to denote an expulsion by the assertion of a paramount title and by process of law, but it is now generally applied to every class of expulsion or amotion. Accordingly, eviction may now be taken to mean anything of a grave and permanent character done by the landlord or those acting under his authority with the intention and effect of depriving the tenant of the use, occupation, and enjoyment of the demised premises, or any substantial part thereof, or the establishment or assertion against the tenant of a title paramount to that of the landlord. It is a wrongful act in the nature of a trespass, although a mere trespass by the landlord does not constitute an eviction. Ordinarily, it is essential that the act of the landlord be of a permanent character in order to constitute an eviction, but permanency has been held not to be essential if the act deprives the tenant of the free enjoyment of the premises."

In 16 R. C. L. p. 688, § 173, the rule is stated thus:

"The concensus of opinion seems to be that an eviction cannot be based on a mere temporary trespass by the landlord, and that such a trespass by the landlord upon the premises, not intended as a permanent amotion or expulsion of the tenant, or to deprive him of the possession and enjoyment of the premises may entitle the tenant to recover damages, but will not amount to an eviction. As has been said, there are clearly some acts of interference by the landlord with the tenant's enjoyment of the premises which do not amount to an eviction, but which may be either mere acts

of trespass or eviction, according to the intention with which they are done."

The rule stated seems to be generally accepted.

We reaffirm what was said upon the former appeal herein [190 Minn. 234]:

"Here we do not think plaintiff ever intended to terminate the lease. He was ill-advised and acted hastily. The inadvertent bringing of this suit for $3,000 for property damage resulted. The next week he brought suit for rent subsequently due. Further, he did not give the 30-day written notice necessary by the terms of the lease to terminate it. His subjective intent was not such that we can say, even if defendant did acquiesce in the supposed termination, that plaintiff intended to make an offer to rescind the lease."

It seems to us that plaintiff's efforts were directed toward the collection of rents accruing under his lease rather than to bring about a defeat of that purpose by eviction of the tenant. Defendant's sole defense rested upon whether plaintiff had made the statement attributed to him by Mr. Klinsing, who testified that plaintiff "told me to get my hat and coat, he was about to lock the building, if I wanted them, to get them out. * * ." He said that he was about to lock the building, if I wanted my hat and coat to get them at once, he was going to lock me out." Klinsing's testimony was supported by that of his brother-in-law, Mr. Johnson. This is the particular point, and the only one, upon which defendant could depend. This is so because Klinsing testified that by reason of plaintiff's remarks, and for that reason only, he vacated the premises on August 26. On this phase of the case he testified thus:

Q. "Now, as I understand you, your claim now is that you left this building, didn't intend to leave, and wouldn't have left, moved out of it, except for the fact Mr. Donaldson said this one sentence to you that you repeated here on the witness stand?

A. "Yes, sir.

Q. "That is correct, is it?

A. "That is correct.

Q. "At least that is your claim now, is it?

A. "Yes, sir."

To refute defendant's claims in respect hereof it is proper here to note that plaintiff denied having made any of the statements attributed to him by Klinsing. He denies being present at the time the deputy sheriff locked up the building and asserts that he did not know the sheriff was going to lock the doors; that he knew nothing about attachments and never told the sheriff what was to be done and that he gave no instructions to anyone. In this claim plaintiff is supported by the deputy who actually made the levy under the attachment. Mr. Evans, attorney for the plaintiff, testified that he gave the deputy no instructions whatsoever in respect of locking up the garage; that when he and the plaintiff went away from the garage nothing was locked up and that he did not even know that any of the buildings or rooms were going to be locked up. There is other evidence in the case which strongly supports plaintiff. The witness Erickson was one of the truckers who hauled Klinsing's property to his new location. He testified that Klinsing told him that his overhead was too high in plaintiff's building and that he could not afford to stay there; that he had a chance to get another building at less rental and that he would take it. He made no claim in his talk with Erickson that he was getting out of plaintiff's building because he was put out. Mr. Ovrid, the owner of the building to which Klinsing moved, testified that some three or four days before August 26 Klinsing came to him on his farm in South Dakota and talked about renting Ovrid's building; that the rental to be paid was $15 per month. Klinsing told Ovrid that he would let him know on the following Saturday (August 27). Klinsing also told Ovrid that he would like a cheaper place. Mr. Valentine, who lived near the Ovrid building, testified that he talked with Klinsing while the latter was moving into the Ovrid building. Klinsing told him that he wanted to get out of the place he was in; that he had a chance to get the Ovrid place and thought he had better take it because his overhead was too big at his former location.. He said nothing

at all to Valentine about moving out of the former place because of having been ordered or put out. Mr. Sendelbach testified that a few days after August 26 Klingsing talked to him and mentioned moving out; that he did so because he was not doing any business in his former location and had to look for a cheaper place; that he could not afford to stay at his former place any longer because of the expense of heating and the high rental being paid. One Mr. Cook verified this same conversation.

The evidence further shows that Klinsing rented the garage as defendant's tenant at $50 per month, while the rent of the Ovrid building to which he moved was only $15 per month; that at the time he moved to this new location he was considerably delinquent in his rental payments. Klinsing made an affidavit in the first action to the effect that the deputy sheriff informed him that he (the deputy) was about to padlock the doors and that he (Klinsing) had better get his hat and coat; that he asked the deputy why he was being locked out and that the deputy informed him that the stuff was levied on that was in the building and he was going to lock the doors. Nowhere in this affidavit did Klinsing claim that the plaintiff had made any statements to him at all.

■ Were we to agree with defendant's contention respecting the challenged instructions we would still be faced with the necessity of determining whether the burden of establishing eviction has been met by defendant. We think the evidence in plaintiff's behalf so overwhelmingly overcomes defendant's claims as to make it almost demonstrably certain that the defense pleaded and relied upon does not exist in fact. If the jury had found the other way, it is clear to us that such verdict could not be sustained. In view of this situation, there can be no doubt that the result reached is right.

The order should be and is affirmed.